**SO ORDERED.**

**SIGNED this 9 day of December, 2019.**



**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 18-05448-5-SWH |
| | CHAPTER 7 |
| WENDY M. DALE, | |
| DEBTOR | |

### ORDER DENYING DEBTOR'S MOTION TO CONVERT
### AND ALLOWING TRUSTEE'S MOTION FOR
### APPROVAL OF COMPROMISE OF CONTROVERSY

Pending before the court are two motions: The chapter 7 trustee's motion for approval of a compromise of controversy, wherein the trustee requests that the court enter an order approving the terms of a proposed compromise between the *pro se* chapter 7 debtor and Red Hat, Inc. ("Red Hat"), and the debtor's motion to convert her chapter 7 case to a case under chapter 13. The trustee's motion to approve compromise was filed on May 20, 2019 (D.E. 59), and the debtor filed a response in opposition on June 7, 2019. D.E. 66. On July 2, 2019, the debtor filed her motion to convert her chapter 7 case (D.E. 77), to which the trustee objected on July 22, 2019. D.E. 91. The trustee also filed, on July 11, 2019, a supplement to his motion to compromise. D.E. 85. A hearing was held in Wilmington, North Carolina on September 18, 2019, at which time the court took the matter under

advisement. For the reasons that follow, the debtor's motion to convert her case will be denied, and the trustee's motion to enter into a compromise of the debtor's claim against Red Hat will be allowed.

## BACKGROUND AND PROCEDURAL HISTORY

The debtor filed her chapter 7 bankruptcy petition on November 8, 2018,[1] and the bankruptcy court entered an order appointing Algernon L. Butler, III as the chapter 7 trustee on November 9, 2018. The order granting the debtor's bankruptcy discharge was entered on February 21, 2019.

The controversy that is at the heart of both the motion to convert and the motion to compromise is an employment-related dispute between the debtor and her former employer, Red Hat. The debtor was first employed by Red Hat as a contracts specialist in August of 2014. In this position, she was involved in the negotiation and review of commercial agreements in support of Red Hat's commercial legal group. After a series of workplace personnel-related incidents in the spring and summer of 2017, the debtor filed an EEOC charge against Red Hat on August 9, 2017 ("EEOC Action"), claiming workplace discrimination premised on Red Hat's failure to properly accommodate certain disabilities alleged by the debtor. Red Hat and the debtor attempted to resolve these issues but were unsuccessful, and Red Hat terminated the debtor's employment on September 5, 2017.

The debtor retained an attorney who negotiated with Red Hat on her behalf in connection with the EEOC claims, and secured an offer of settlement in the amount of $54,450.00. The debtor argues that while she may have considered accepting this offer, she ultimately did not do so because

---

[1] Previously, the debtor filed a petition under chapter 13 on May 7, 2015. *In re Dale*, Case No. 15-02589-5-DMW. A discharge in that case was entered on June 18, 2018.

she believed the offered sum to be too low. The debtor thereafter dismissed her attorney and informed Red Hat that she was no longer represented by counsel.

On June 6, 2018, the debtor, proceeding *pro se*, filed a civil action in federal district court against Red Hat and Leah Moore (individually and in her official capacity as Red Hat's Senior People Risk Manager), and then amended her complaint on August 14, 2018. The amended complaint alleged that Red Hat violated her rights under the Americans with Disabilities Act ("ADA") by failing to accommodate certain disabilities, by subjecting her to disparate treatment, and by engaging in retaliation; in addition, the debtor alleged wrongful termination under North Carolina state law (collectively, the "Claims Against Red Hat"). *Dale v. Red Hat, Inc.*, Case No. 5:18-CV-262-BO (E.D.N.C. 2018) ("Employment Action"). On motion of defendants Red Hat and Moore, the district court entered an order dismissing Moore from all of the claims asserted against her, and denying Red Hat's partial motion to dismiss.[2]

The Employment Action was pending at the time the debtor filed her chapter 7 petition and is the property of the bankruptcy estate. In schedules filed with the bankruptcy petition on November 8, 2018, the debtor valued the Employment Action at $32,000,000.00, and claimed no exemption in it. D.E. 1 at 19. The debtor amended her schedules on December 27, 2018, to value the Employment Action at $0.00 and to claim an exemption in that asset pursuant to N.C. Gen. Stat. § 1C-1601(a)(2) of "100% of the fair market value, up to any statutory limit." The debtor likewise claimed the fair market value, up to any statutory limit, of certain cash deposits in the total amount of $70. D.E. 24 at 8, 12. The trustee filed an objection, stating:

---

[2] The debtor also filed a state court action in Wake County Superior Court against Red Hat and multiple individual defendants, which also was dismissed on motion of defendants. *Dale v. Red Hat, Inc.*, Case No. 17 CvS 14409 (2017).

> As the debtor has claimed exemptions pursuant to N.C. Gen. Stat. § 1C-1601(a)(2) of "100% of the fair market value, up to any statutory limit" in both deposits of money listed with a value of $70, and in the Claims against Red Hat ... which she has valued at $0, the Trustee requests that the Court enter an order (i) allowing the Debtor's claim of exemptions in the deposits of money pursuant to N.C. Gen. Stat. § 1C-1601(a)(2) in the scheduled value of $70, and (ii) limiting the Debtor's claim of exemption in the Claims Against Red Hat ... to the statutory limit of N.C. Gen. Stat. § 1C-1601(a)(2) less $70 representing the claim of exemption in the deposits of money.

D.E. 27 at 2. Under N.C. Gen. Stat. § 1C-1601(a)(2), then, the debtor's exemption in the Employment Action would be limited to $4,930.00. Further, arguing that the debtor already had received adequate time in which to claim exemptions and that any further amendment would be prejudicial to administration of the estate, the trustee sought entry of an order providing that the debtor could not further amend or increase her claims of exemptions. *Id*. The debtor did not respond, and the motion was allowed by order entered on January 24, 2019. D.E. 37.

On February 22, 2019, the trustee filed an amended objection to exemptions in which he sought the same relief the court already had allowed, explaining that his original objection to exemptions had been returned to the trustee's office as "Undeliverable" notwithstanding that it had been correctly addressed. The trustee stated that his office had contacted the debtor via email and had confirmed with her the accuracy of that address, as well as the debtor's actual receipt of court notices and orders, and that the debtor had informed the trustee that she was temporarily living elsewhere. This amended motion was then served on the debtor via email, at her permanent address, and also at the temporary address she provided to the trustee. Again, the debtor did not file a response. The court's order granting this amended objection to the debtor's claim of exemptions was entered on March 4, 2019. D.E. 51.

On May 20, 2019, the trustee filed a motion for approval of a compromise of the controversy between the debtor and Red Hat, seeking approval of a proposed settlement of the Employment Action and the Claims Against Red Hat for the total sum of $54,450.00. Of this amount, the trustee proposed that Red Hat pay $10,000.00 to the bankruptcy estate to compensate the estate for time and expense expended by the trustee, with the remaining $44,450.00 paid to the estate in full and final resolution of any claims the estate may have had against Red Hat (the "Settlement Agreement"). D.E. 59. On June 7, 2019, the debtor filed a response in opposition to the motion, wherein she argued that the trustee's proposed settlement was unreasonable, reflected a lack of due diligence, and was fundamentally unfair in that the proposed agreement grossly undervalued a claim she estimates to be worth $32 million dollars. In addition, the debtor argued that other assets of the bankruptcy estate, as well as expected disbursements in connection with her claim for social security disability benefits, would be sufficient to pay the valid claims against the estate without resort to the Employment Action. D.E. 66. On July 11, 2019, the trustee filed a supplement to his motion for approval of compromise in order to "summarize the legal framework and burden-shifting analysis relevant to the plaintiff's attempt to establish employment-related claims such as the Claims Against Red Hat, and to provide the court with additional background information and facts in support of the Motion including corrections to certain statements appearing in the Debtor's objection which are believed to be unfounded."[3] D.E. 85 ("Trustee's Supplement") at 1-2.

The debtor filed an amended objection to the student loan claim of Ascendium Education Services, Inc. ("Ascendium") on June 7, 2019, contending that the claim should be denied because

---

[3] Appended to the Trustee's Supplement are exhibits, including emails and similar correspondence between the debtor and personnel at Red Hat, that would be integral to both the debtor's pursuit of her claims against Red Hat, and Red Hat's defense to such claims.

5

she had entered into a loan rehabilitation program with Ascendium pursuant to which she now makes direct payments of $5.00 per month. Ascendium's unsecured claim is in the amount of $61,657.76. A hearing on the objection was held on July 16, 2019, and an order denying the debtor's amended objection to Ascendium's claim was entered on July 24, 2019. D.E. 94.

On July 2, 2019, the debtor filed a motion to convert her chapter 7 case to a case under chapter 13. D.E. 77. The debtor stated that she had obtained employment, was in receipt of regular income sufficient to fund a chapter 13 plan, and could put forward a plan that would pay, in full, the claims of all of her non-secured, *non-student loan* creditors. The trustee objected, arguing that there was no proper basis upon which to exclude the Ascendium claim from any proposed chapter 13 repayment plan. The trustee contends that in the debtor's chapter 7 case, "a total of $70,014.00 in claims have been filed – $1,094.73 of which are secured claims, and $68,919.27 of which are unsecured claims." Trustee's Objection to Motion to Convert (D.E. 91) at 4 ("Trustee's Objection"). The unsecured claims include Ascendium's $61,656.76 claim. More generally, the trustee objected to the motion to convert on grounds that it was "not in good faith and is based on no plausible claim that she can propose a confirmable chapter 13 plan." *Id*. at 5.

The debtor responded that it was her "intent to render [the] Trustee's Motion to Approve Settlement moot by converting to Chapter 13 Bankruptcy, under which she is entitled to retain control over her assets." Debtor's Response to Trustee's Supplemental Motion to Approve Compromise of Controversy and Supplemental Motion to Convert to Chapter 13 (D.E. 99) at 1 ("Debtor's Response"). The debtor maintained that she has at all times been fully transparent about her income and assets, and that if she is permitted to convert the case, she would not be "depriving her creditors of anything they are legally entitled to so long as Debtor complies with the applicable

6

bankruptcy law and a Court-approved Chapter 13 Plan." *Id.* at 6.  For the reasons set out below, the court concludes that applicable bankruptcy law precludes conversion of this case, and supports the court's approval of the compromise proposed by the trustee.

## DISCUSSION

### I. Debtor's Motion to Convert

For the reasons that follow, the motion to convert will be denied on grounds that the court agrees with the trustee that the debtor currently is not in receipt of "regular income" sufficient to propose a viable chapter 13 plan, as required by § 109(e). The court concludes further that the motion to convert was not filed in good faith, and thus runs afoul of § 1307(c). In addition, the court finds that the unique facts of this case support denial of the motion to convert pursuant to the broad authority conferred upon the court under 11 U.S.C. § 105(a).

The debtor contends that her "right to convert to Chapter 13 is absolute so long as Debtor has acted in good faith during her Chapter 7 bankruptcy and has not previously converted from a Chapter 7 bankruptcy." Debtor's Response (D.E. 99) at 5. In a nutshell, her position is that she has "acted in good faith, has never converted from a Chapter 7 bankruptcy, and is therefore entitled to convert in order to regain control over her assets, including her employment discrimination lawsuit against Red Hat and to reorganize her debt into a manageable plan based on her present and future income." *Id.* at 6. She contends that she would be willing and able, under a chapter 13 plan of three to five years' duration, to pay her creditors as much they could receive in the chapter 7 bankruptcy. Her candidly expressed intent in seeking to convert is to regain control of the Employment Action, based on her belief that the trustee has failed to develop a reasonable and objective understanding of the facts of that action, underestimates its value (both monetary and non-monetary, with respect

7

to the debtor's personal and professional reputation in her field), has engaged in "clandestine negotiations" with Red Hat and, ultimately, accepted a proposed settlement that is "unabashedly biased in favor of Red Hat's position." Debtor's Objection (D.E. 66) at 3-4.

The trustee points out in response that the debtor's motion to convert affirmatively states that her proposed plan would pay in full the *non-student loan* creditors, "which amount would represent only about 10% of the unsecured claims and only 13% of the value of the Red Hat settlement alone." D.E. 91 at 5 n.2. Any chapter 13 plan must provide for payment of *at least* $54,450.00, the trustee argues, because the liquidation amount of that claim has been established. Moreover, the trustee contends that the debtor has made misleading and inaccurate representations on her statements regarding the Employment Action, which is her principle asset.

Having fully considered the parties' filings as well as the arguments presented during the hearing on September 18, 2019, the court finds that the debtor is not qualified to be a debtor under chapter 13. The right of a debtor in a chapter 13 case to convert to a case under chapter 7 is not, as the debtor argued, an "absolute" right, because the ability of a debtor to convert may be limited or precluded in the presence of bad faith or for other cause, as specified in 11 U.S.C. § 1307(c). The bases on which a chapter 7 debtor may convert to a case under chapter 13, and in particular the statutory limitations on that ability, were discussed at length in *Marrama v. Citizens Bank of Massachusetts*, wherein the Supreme Court made clear that a debtor's right to convert is not absolute. *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 372 (2007).

In *Marrama*, the Court turned first to 11 U.S.C. §§ 706(a) and (d), which provide:

(a) The debtor may convert a case under this chapter to a case under chapter 11,12, or 13 of this title at any time, if the case has not be converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.

8

> . . .
> (d) Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.

*Id.* at 371, *quoting* 11 U.S.C. §§ 706(a), (d). Discussing those limitations, the Court explained that the "broad description of the right as 'absolute' fails to give full effect to the limitation in subsection (d). The words 'unless the debtor may be a debtor under such chapter' expressly conditioned [the debtor's] right to convert on his ability to qualify as a 'debtor' under Chapter 13." *Id.* at 372. Ultimately, the Court found that there were

> at least two possible reasons why Marrama may not qualify as a debtor, one arising under § 109(e) of the Code, and the other turning on the construction of the word "cause" in § 1307(c). . . . More pertinently, the latter provision, § 1307(c), provides that a Chapter 13 proceeding may be either dismissed or converted to a Chapter 7 proceeding "for cause" and includes a nonexclusive list of 10 causes justifying that relief.

*Id.* at 372-73. Section 109(e) specifies that only an individual with "regular income" may be a debtor under chapter 13. Section 1307(c) addresses the circumstances that would justify dismissal or conversion of a chapter 13 case, which is relevant now in this chapter 7 context because "courts have also held that acts of bad faith committed prior to filing [a chapter 13 case] constitute 'cause' for the purposes of § 1307(c)." *In re Fields*, 2016 WL 3462203 *3 (Bankr. E.D.N.C. June 17, 2016), construing *Marrama*, 549 U.S. at 367 n.3.

Here, the court agrees with the trustee that the debtor has not shown that she has the regular income stream necessary to fund a chapter 13 plan, or that her proposed chapter 13 plan could provide an appropriate payout to creditors. The debtor represented that she now has regular employment at Arby's, as well as freelance paralegal work, but has provided no indication of her

salary.[4]  There is no way to establish the feasibility of a proposed chapter 13 plan without that baseline information, and the court agrees with the trustee's conclusion that the debtor has "implicitly conceded that her income is insufficient to make up the value of the Red Hat settlement." D.E. 91 at 8.  Moreover, the debtor skips over her school loan obligation and suggests that a $5.00 per month direct payment plan essentially covers it with respect to creditor Ascendium.  The court, however, denied the debtor's amended objection to Ascendium's proof of claim and instead allowed Ascendium's unsecured claim in the amount of $61,656.76 by order entered on August 24, 2019.  It is clear that without regular income to direct toward the allowed claims in this chapter 7 action, the debtor is unable to propose a plan that would pay each allowed unsecured claim an amount that is "not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7."  11 U.S. C. § 1325(a)(4).

The court turns next to the broader analysis of whether the debtor's motion to convert should be denied on grounds that it is not in good faith, which generally involves an assessment of the totality of the circumstances.  *See, e.g., Fields*, 2016 WL 3462203 *4 ("A determination of bad faith requires an examination of the totality of the circumstances."); *see also In re Marino*, 388 B.R. 679, 682 (Bankr. E.D.N.C. 2008).  The debtor's chapter 7 case was filed five months after her receipt of a discharge under chapter 13.  The motion to convert was filed only after the trustee filed his motion to compromise the Employment Action, and there is no question about the debtor's motivation in filing that motion, which was to regain control of the Employment Action.

---

[4] At the hearing on September 18, 2019, the debtor provided a letter dated September 17, 2019, which appears to be her acceptance of employment with Smiths Detection, Inc., a company based in Edgewood, Maryland.  The letter specifies that accepting the position would require the debtor to relocate to Edgewood, Maryland, in order to report to the Edgewood site on Monday, October 7, 2019.  There is no indication in the docket that the debtor has done so.

The issue here lies not in the debtor's desire to convert, but rather in the steps she has taken to facilitate it: Specifically, the debtor's amendment of her schedules to downgrade the value of the Employment Action from $32,000,000.00, which the court finds to be wildly overvalued, to $0.00 with a claimed exemption in that "fair market value," which the court finds to be a material and intentional misrepresentation.

The court sees the debtor's misrepresentation of the value of the Employment Action, together with her effort to convert the case in order to take control of that asset despite her inability to qualify as a chapter 13 debtor, as being uncomfortably similar to the facts in *Marrama*. In that case, the chapter 7 debtor made misleading or inaccurate statements about a number of things and especially about his principal asset, which was a house in Maine. The debtor listed its value as zero, and denied that he had transferred any property other than in the ordinary course of business within the previous year. "In fact," the Court wrote, the property "had substantial value, and Marrama had transferred it into the newly created trust for no consideration seven months prior to filing his Chapter 7 petition." *Marrama,* 549 U.S. at 368. Marrama acknowledged that "the purpose of the transfer was to protect the property from his creditors." *Id.*

After the trustee informed Marrama's counsel that he intended to recover the property as an asset of the estate, Marrama sought to convert to a case under chapter 13. The trustee objected on grounds that the "request to convert was made in bad faith and would constitute an abuse of the bankruptcy process." *Id*. at 369. The debtor countered that the misstatements were mere "scrivener's errors," and also that while he initially had filed under chapter 7 because he was unemployed, he recently had obtained employment and thus was newly eligible to proceed in chapter 13. *Id.* The bankruptcy court rejected these arguments; on appeal, so too did the district

11

court, the bankruptcy appellate panel, and Court of Appeals for the First Circuit. *Id.* at 369-71. The bankruptcy appellate panel specifically rejected Marrama's claim of an absolute right to convert, and interpreted § 706(a),

> when read in connection with other provision of the Code and the Bankruptcy Rules, as creating a right to convert a case from Chapter 7 to Chapter 13 that is "absolute *only in the absence of extreme circumstances*." *In re Marrama*, 313 B.R. 525, 531 (1st Cir. B.A.P. 2004). In concluding that the record disclosed such circumstances, the panel relied on Marrama's failure to describe the transfer of the Maine residence into the revocable trust, his attempt to obtain a homestead exemption on rental property in Massachusetts, and his nondisclosure of an anticipated tax refund.

*Id*. at 370 (emphasis added). The court of appeals agreed, holding that

> [i]n construing subsection 706(a), it is important to bear in mind that the bankruptcy court has unquestioned authority to dismiss a chapter 13 petition – as distinguished from converting the case to chapter 13 – based upon a showing of 'bad faith' on the part of the debtor. We can discern neither a theoretical nor a practical reason that Congress would have chosen to treat a first-time motion to convert a chapter 7 case to chapter 13 under subsection 706(a) differently from the filing of a chapter 13 petition in the first instance. (Citations omitted).

*Id.* at 370-71, quoting *In re Marrama*, 430 F.3d 474, 479 (1st Cir. 2005).

The "extreme circumstances" that constituted bad faith in *Marrama* were the debtor's efforts to conceal his assets and his pursuit of conversion to chapter 13 when that failed. The Court accepted the lower courts' collective reasoning that in this situation, where a bankruptcy court has the authority to dismiss a chapter 13 petition due to a debtor's bad faith, that authority extends to refusing to allow conversion from chapter 7 to chapter 13 in the first place. In that instance, the chapter 7 debtor has "forfeited his right to proceed under Chapter 13." *Id*. at 371. In this case, as in *Marrama*, the debtor cannot qualify as a debtor under chapter 13 due to the combination of bad faith and the debtor's inability to propose a feasible, confirmable chapter 13 plan.

Finally, the *Marrama* Court observed that "[n]othing in the text of either § 706 or § 1307(c) (or the legislative history of either provision) limits the authority of the court to take appropriate action in response to fraudulent conduct by the atypical litigant who has demonstrated that he is not entitled to the relief available to the typical debtor." *Id.* at 374-75. To the contrary, the Court held, the "broad authority granted to bankruptcy judges to take any action that is necessary or appropriate to 'prevent an abuse of process' described in § 105(a) of the Code, *is surely adequate to authorize an immediate denial of a motion to convert filed under § 706 in lieu of a conversion order that merely postpones the allowance of equivalent relief and may provide a debtor with an opportunity to take action prejudicial to creditors.*" *Id.* at 375 (emphasis added, footnote omitted). This court finds ample grounds on which to exercise its authority, under § 105(a), to deny the motion to convert.

## II. Motion to Approve Compromise of Controversy

Pursuant to 11 U.S.C. § 541(a), the Employment Action and the Claims against Red Hat are property of the chapter 7 estate, and the trustee is vested with the authority to prosecute, settle or compromise such a claim, subject to the bankruptcy court's approval. *E.g., Vinal v. Federal Nat. Mortg. Ass'n*, 131 F. Supp. 3d 529 (E.D.N.C. 2015). "If a cause of action is part of the estate of the bankrupt then the trustee alone has standing to bring that claim." *Id.* at 537, quoting *National Am. Ins. Co. v. Ruppert Landscaping Co.*, 187 F.3d 439, 441 (4th Cir. 1999); *see* Fed. R. Bankr. P. 9019(a) ("On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement.").

The debtor does not contest the trustee's statutory authority to prosecute or settle the Employment Action in the context of her chapter 7 case, but rather takes exception to his valuation

13

of it. According to the trustee, the debtor informed him in recent months that she would never settle with Red Hat for less than $5,000,000.00, which the trustee believes to be "orders of magnitude outside any reasonable assessment." D.E. 91 at 5 n.1. For her part, the debtor contends that the trustee "would have to show that there is absolutely no way that Debtor could prevail in her lawsuit in order to claim that $54,450 would be a reasonable settlement." D.E. 99 at 3. The debtor cites no foundation for this suggested standard, nor is the court aware of any.

What *is* required is that the trustee establish, to the court's satisfaction, that the proposed compromise is within the range of reasonableness. *See, e.g., In re Health Diagnostic Laboratory, Inc.*, 2016 WL 6068812 *3 (Bankr. E.D. Va. Oct. 14, 2016). The court must independently consider a range of factors, which include "(a) the probability of success in litigation; (b) the possible difficulties of collecting on any judgment which might be obtained; (c) the complexity of the litigation involved, and the expense, inconvenience, and likely duration and delay necessarily attending to it; and (d) the paramount interest of the creditors." Trustee's Motion (D.E. 59) at 4 (discussing *Health Diagnostic* factors). A bankruptcy court must "employ its 'informed, independent judgment' to determine whether the settlement is both 'fair and equitable." *In re Bond*, 16 F.3d 408 *3 (4th Cir. 1994), quoting *Protective Committee for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (setting out the four factors in context of compromises incident to chapter 11 reorganization). In its review, the bankruptcy court is "uniquely positioned to consider the equities and reasonableness of a particular compromise." *Id.,* quoting *In re American Reserve Corp.*, 841 F.2d 159, 162 (7th Cir. 1987).

In the initial motion, and again in the Supplement to Trustee's Motion for Approval of Compromise of Controversy ("Trustee's Supplement") filed on August 11, 2019, the trustee

14

specifically and accurately summarized the "legal framework and burden-shifting analysis relevant to a plaintiff's attempt to establish employment-related claims such as the Claims Against Red Hat," as well as his review of the available evidence in connection with those claims. D.E. 85. The trustee reviewed the many factors that together create a full and accurate picture of the issues raised in the Employment Action, including the comparative strengths and weaknesses of both parties' positions based upon the facts (both disputed and non-disputed) and the applicable statutory and case law. In addition, the trustee provided sworn declarations from Red Hat's counsel and from the manager of the employee relations team within Red Hat's department of human resources. These declarations form part of the basis for the trustee's assessment of the extent to which it would be "time-consuming, expensive and risky" to pursue the claims against Red Hat, and the extent to which substantial evidence would support Red Hat's

> position that it terminated the Debtor for legitimate non-discriminatory business reasons, that providing any accommodation for the Debtor would have caused it an undue hardship, that the debtor failed to communicate and cooperate with Red Hat to identify a reasonable accommodation, that even with a reasonable accommodation the Debtor would have been unable to perform the essential duties of her job, and that [the] Debtor was otherwise subject to termination for engaging in misconduct during her employment with Red Hat.

*Id*. at 6 (citing Exhibits A (Declaration of Randall D. Avram) and B (Declaration of Terri Harrell)). While the debtor does not agree with the content of these declarations, that in no way discounts the extent to which they are relevant to both parties' ability to realistically assess the future litigation landscape, if the Employment Action and the Claims Against Red Hat were to go to trial.

Finally, in assessing the proposed compromise, the court is not required to test the soundness of the trustee's position with a mini-trial, but rather must ensure that the compromise is within the range of reasonableness. *In re Cajun Elec. Power Corp.*, 119 F.3d 349, 356 (5th Cir. 1997) (court

need not "conduct a mini-trial to determine the probable outcome of any claims waived in the settlement"). Indeed, the court "does not have to be convinced that the settlement is the *best* possible compromise, but only that the settlement falls *within a reasonable range* of litigation possibilities. Therefore, the settlement need only be above 'the lowest point of reasonableness.'" *Health Diagnostic*, 2016 WL 6068812 at *3 (emphasis added); *see also In re Final Analysis, Inc.*, 417 B.R. 332, 342 (Bankr. D. Md. 2009) (discussing analytical standards applicable in court's exercise of its discretion).

The court's review of the parties' filings indicates that there are substantial risks to the estate in pursuing the cause of action, that the risks and benefits of trial have been fairly and fully assessed by the trustee, and that the proposed compromise is within the range of reasonableness; it is in fact substantially above the "lowest point," the debtor's dissatisfaction notwithstanding. The court concludes that the settlement as proposed is in the best interest of both the estate and its creditors. Accordingly, the court will, contemporaneously with entry of this order, enter the trustee's proposed Order Approving Compromise of Controversy, and will approve the Settlement Agreement.

## CONCLUSION

For those reasons, the debtor's motion to convert her chapter 7 case to a case under chapter 13 is **DENIED**. The trustee's motion seeking approval of the proposed settlement agreement between the trustee, not individually but solely in his capacity as the chapter 7 trustee for the bankruptcy estate of the debtor, and Red Hat, is **ALLOWED**.

## END OF DOCUMENT