IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:19–CV–254–BR

| | |
|---|---|
| WENDY DALE, ) | |
| ) | |
| Appellant, ) | |
| v. ) | ORDER |
| ) | |
| ALGERNON L. BUTLER, III, ) | |
| ) | |
| Appellee. ) | |

This matter is before the court on the appeal of debtor Wendy Dale ("appellant") from the bankruptcy court's: (1) 9 December 2019 order denying appellant's motion to convert and allowing Algernon L. Butler, III's (the "trustee") motion for approval of compromise of controversy and (2) 8 January 2020 orders denying appellant's motion to stay pending appeal and motion to reconsider. (Am. Notice of Appeal, DE # 5.)

## I. BACKGROUND

In June 2018, appellant filed *pro se* an employment discrimination lawsuit against her former employer Red Hat, Inc. ("Red Hat").[1] Dale v. Red Hat, Inc., No. 5:18–CV–262–BO, DE # 5 (E.D.N.C.) In her amended complaint, appellant alleges claims under the Americans with Disabilities Act and for wrongful termination in violation of public policy under North Carolina law. Id., DE # 20. Appellant demands $2,000,000 in compensatory damages and $30,000,000 in punitive damages. Id. In November 2018, the court denied Red Hat's motion to dismiss.[2] Id., DE # 30.

---

[1] Appellant also filed the lawsuit against a Red Hat employee. See Dale v. Red Hat, Inc., No. 5:18–CV–262–BO, DE # 5 (E.D.N.C.). On motion, the court dismissed the employee from the action. Id., DE # 30.
[2] The lawsuit is stayed pending disposition of this appeal. See Dale v. Red Hat, Inc., No. 5:18–CV–262–BO, DE # 52.

A few weeks prior to that decision, appellant filed a voluntary petition under Chapter 7 of the Bankruptcy Code. Among her assets, appellant listed her pending employment discrimination lawsuit, which she valued at $32,000,000. (R., DE # 8-1, at 21.) She did not claim an exemption in the lawsuit.[3] (See id. at 24-25.) Later, appellant amended her schedules of assets and exemptions, changing the value of the lawsuit to $0 and claiming an exemption in the lawsuit in the amount of "100% of fair market value, up to any applicable statutory limit" based on N.C. Gen. Stat. § 1C-1601(a)(2).[4] (Id. at 80, 84.) The trustee filed an objection to this claimed exemption and requested that the bankruptcy court limit the exemption and prohibit appellant from further amending it. (Id. at 89-92.) Appellant did not file a response, (Appellant's Br., DE # 18, at 10), and the bankruptcy court allowed the objection and ordered appellant could not further amend this exemption, (R., DE # 8-1, at 93-94). As a result, appellant's exemption in the lawsuit is limited to $4,930. (See id.; Appellant's Br., DE # 18, at 10.)

In May 2019, the trustee filed a motion for approval of the settlement he had negotiated with Red Hat of all claims in the employment discrimination lawsuit for $54,450, representing $10,000 to compensate and reimburse the estate for the trustee's time and expense related to the settlement and the remainder as consideration for the dismissal of the claims in the lawsuit and a release. (R., DE # 8-2, at 4-23.) Appellant filed an objection to the motion and requested a

---

[3] When a debtor files a voluntary petition for relief under chapter 7, a bankruptcy estate is created that contains "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Bankruptcy Rule 4003(a) provides that every "debtor shall list the property claimed as exempt under § 522 of the [Bankruptcy] Code on the schedule of assets required to be filed by Rule 1007." Fed. R. Bankr. P. 4003(a); Fed. R. Bankr. P. 1007.
In re Gregory, 487 B.R. 444, 447 (Bankr. E.D.N.C. 2013).
[4] Under N.C. Gen. Stat. § 1C1-1601(a)(2), a debtor may claim a "wildcard" exemption in any property in an amount up to $5,000. See In re Phillips, 553 B.R. 536, 543 n.14 (Bankr. E.D.N.C. 2016).

2

hearing. (Id. at 24-38.) Later, the trustee supplemented his motion, (id. at 79-183), to which appellant responded, (id. at 200-03).

In July 2019, appellant filed a motion to convert her bankruptcy case from Chapter 7 to Chapter 13, (id. at 63-66), to which the trustee objected, (id. at 184-95). Later, appellant supplemented her motion. (Id. at 204-06.)

In the meantime, appellant also filed an objection to the proof of claim of her largest unsecured creditor, Ascendium Education Solutions, Inc. ("Ascendium").[5] (Id. at 51-62.) After a hearing, the bankruptcy court denied the objection and allowed the claim. (Id. at 196.)

In September 2019, the bankruptcy court held an evidentiary hearing on appellant's motion to convert her case and the trustee's motion for approval of the settlement. (9/18/19 Tr., DE # 10.) On 9 December 2019, the bankruptcy court denied appellant's motion and allowed the trustee's motion. (Notice of Appeal, DE # 1-1.) Thereafter, appellant appealed from that order, (DE # 1), and filed a motion to stay pending appeal, (R., DE # 8-2, at 243-48). She later filed a motion for a new hearing or, alternatively, for reconsideration of the December 2019 order and of the earlier orders regarding her claimed exemptions and her objection to Ascendium's claim. (Id. at 254-65). In separate orders, on 8 January 2020, the bankruptcy court denied appellant's motions, and appellant amended her appeal to include those orders. (DE # 5.)

---

[5] A "claim" generally means a right to payment that a debtor owes to a creditor. After a debtor files a bankruptcy petition, creditors may file a proof of claim. Once a creditor files a proof of claim the court may deem it allowed, unless a party in interest objects to such claim.
Breen v. Portfolio Recovery Assocs., LLC, No. 3:18CV759, 2019 WL 2871142, at *6 (E.D. Va. July 3, 2019) (concerning Chapter 13 requirements) (citations omitted), appeal dismissed, No. 19-1844, 2019 WL 7834327 (4th Cir. Sept. 23, 2019); see also Burkhart v. Grigsby, 886 F.3d 434, 436 (4th Cir. 2018) (recognizing Chapters 7 and 13 "are governed by the same subchapter on creditors and claims" which "details the formal process for filing a proof of claim and claim allowance," among other things).

## II.  DISCUSSION

When reviewing a decision of the bankruptcy court, this court sits as an appellate court and applies the same standards as would the Court of Appeals.  Paramount Home Ent. Inc. v. Circuit City Stores, Inc., 445 B.R. 521, 526-27 (E.D. Va. 2010).  Accordingly, the court reviews the factual findings of the bankruptcy court for clear error and its legal conclusions *de novo*.  See Mort Ranta v. Gorman, 721 F.3d 241, 250 (4th Cir. 2013).

In her opening brief, appellant claims the bankruptcy court erred by: (1) ordering appellant could not amend her claim of exemption in the employment discrimination lawsuit; (2) denying her motion to convert her case; (3) allowing the trustee's motion for approval of the settlement of the employment discrimination lawsuit; and (4) allowing the claim of Ascendium. (Appellant's Br., DE # 18, at 6; see also id. at 16-18 (summarizing arguments).)  She does not make any argument regarding the bankruptcy court's denial of her motion to stay pending appeal, and, accordingly, she has abandoned this issue.  See Bastman v. Hassell, No. 5:18-CV-486-D, 2019 WL 2366422, at *3 (E.D.N.C. 2019) (holding the appellant had abandoned the issue where the appellant had noted appeal of the bankruptcy court's ruling but did not address it in her opening brief) (collecting cases).  The court turns to the merits of the appeal.

A.   **Denial of Reconsideration of Exemption**

In January 2019, the bankruptcy court entered its order prohibiting appellant from further amending her claimed exemption in the employment discrimination lawsuit.  Specifically, the bankruptcy court found that appellant "has had adequate time to claim exemptions, and any amendment to [her] claims of exemption in the property that is the subject of this objection after the entry of the Court's order on this objection would be prejudicial to the Trustee and his administration of this estate."  (R., DE # 8-1, at 94.)  Nearly a year later, appellant sought

reconsideration of this order pursuant to Federal Rule of Civil Procedure 60(b) to enable her to amend her exemption in the employment discrimination lawsuit, specifically to claim an exemption under N.C. Gen. Stat. § 1C-1601(a)(12) based on any payments representing lost wages.  (See R., DE # 8-2, at 256.)  After a hearing, the bankruptcy court denied the motion for reconsideration.  (Am. Notice of Appeal, DE # 5, at 4.)

Appellant claims the bankruptcy court erred because she is entitled to relief from the January 2019 order under Rule 60(b)(1), (3), (4), (5), and (6).  (Appellant's Br., DE # 18, at 26.)  These provisions generally permit the court to relieve a party from a final judgment or order for mistake, inadvertence, or misrepresentation or misconduct by an opposing party; where the judgment is void or applying it prospectively is no longer equitable; or for any other reason justifying relief.  Fed. R. Civ. P. 60(b)(1), (3)-(6).

Rule 60 applies in bankruptcy cases.  Fed. R. Bank. P. 9024.  "'In ruling on an appeal from a denial of a Rule 60(b) motion this Court may not review the merits of the underlying order; it may only review the denial of the motion with respect to the grounds set forth in Rule 60(b).'"  Breen v. Stephenson, No. C.A. 4:08-804-TLW, 2009 WL 440490, at *4 (D.S.C. Feb. 20, 2009) (quoting In re Burnley, 988 F.2d 1, 3 (4th Cir. 1992)).  "The Court reviews the denial of a Rule 60 motion for reconsideration under an abuse of discretion standard." Snyder v. I.R.S., No. CIV. L-07-255, 2007 WL 4287529, at *1 (D. Md. Mar. 8, 2007) (footnote omitted), aff'd, 241 F. App'x 984 (4th Cir. 2007); see also Cook Group Inc. v. Wilson (In re Wilson), 248 B.R. 745, 748 (M.D.N.C. 2000).  "A court abuses its discretion when its conclusion is guided by erroneous legal principles or rests upon a clearly erroneous factual finding." Blue Cross Blue Shield of N.C. v. Jemsek Clinic, P.A. (In re Jemsek Clinic, P.A.), 850 F.3d 150, 156 (4th Cir. 2017) (citation and internal quotation marks omitted).

The bankruptcy court did not abuse its discretion in denying appellant's motion to reconsider.  First, in her motion for reconsideration, appellant gave the bankruptcy court no explanation for why she did not initially claim an exemption in the employment discrimination lawsuit under N.C. Gen. Stat. § 1C-1601(a)(12).  Furthermore, there was no ground for the bankruptcy court to reconsider its order as it would have been futile to allow appellant to claim this exemption.  By the statute's plain language, the exemption applies only to "[a]limony, support, separate maintenance, and child support payments or funds."  N.C. Gen. Stat. § 1C-1601(a)(12).  Any lost wages that might be recovered in the employment discrimination lawsuit are not payments or funds covered by § 1C-1601(a)(12).

Appellant argues other statutory exemptions apply.  (See Appellant's Br., DE # 18, at 23-25; Appellant's Reply, DE # 21, at 9.)  However, she did not raise that argument with the bankruptcy court, and this court will not consider it now.  See Williams v. Lynch (In re Lewis), 611 F. App'x 134, 137 (4th Cir. 2015) (holding the appellant had waived an argument because he failed to raise it in the district court); Williams v. McDow (In re Williams), No. 5:10CV00049, 2010 WL 3292812, at *6 (W.D. Va. Aug. 19, 2000) ("Because a district court functions as an appellate court when reviewing a bankruptcy court's decision, a district court in these circumstances[, i.e., where the appellants failed to raise an argument in the proceedings below,] applies the same legal standards that govern appellate review in a court of appeals." (citations and internal quotation omitted)).  For the same reason, the court does not consider appellant's other arguments under Rule 60(b), such as the trustee engaged in misrepresentation.  (See Appellant's Br., DE # 18, at 26.)  Also, the court does not consider appellant's arguments, (see id. at 21-22), which go to the merits of the bankruptcy court's underlying order.  See Breen, 2009 WL 440490, at *4.

6

Appellant failed to show any ground for relief under Rule 60(b), and therefore, the bankruptcy court properly denied her motion for reconsideration.

B.      **Denial of Conversion**

Appellant next contends the bankruptcy court erred by not allowing the conversion of her case from Chapter 7 to Chapter 13.

> Chapter 7 enables the debtor to discharge prepetition debts subsequent to liquidation of the debtor's assets by a bankruptcy trustee; the trustee then distributes the proceeds to the creditors. [*Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007).] Chapter 13 enables an individual with regular income to obtain a discharge following the bankruptcy court's approval of a payment plan. *Id.* Chapter 7 requires the bankruptcy trustee to control the debtor's non-exempt assets, while under Chapter 13, the debtor retains control over his or her property. *Id.* A debtor who initially files his or her bankruptcy petition under Chapter 7 may convert it to Chapter 13. 11 U.S.C. §§ 706(a), 1307(a), (c).

In re Piccoli, No. CIV.A.06-2142, 2007 WL 2822001, at *4 (E.D. Pa. Sept. 27, 2007); see also Burkhart v. Grigsby, 886 F.3d 434, 436 (4th Cir. 2018).

Under the Bankruptcy Code, a Chapter 7 debtor may convert her case to a Chapter 13 case "at any time, if the case has not been converted" previously under Chapter 13. 11 U.S.C. § 706(a). Despite this language, the Chapter 7 debtor's right to convert is not absolute; rather, it is subject to another provision of the Code, which "expressly condition[s the debtor's] right to convert on [her] ability to qualify as a 'debtor' under Chapter 13." Marrama, 549 U.S. at 372; see also 11 U.S.C. § 706(d) ("Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter."). A debtor is so qualified if her debt is within certain limits, see 11 U.S.C. § 109(e), and if she has income "sufficiently stable and regular to enable [her] to make payments under a plan under Chapter 13," id. § 101(30); see also id. § 109(e). "The Debtor bears the burden of proof in establishing the ability to make the payments needed under the plan and must

7

provide a sufficient factual basis for the court to determine both the regularity and stability of the income." In re Mullins, 360 B.R. 493, 499 (Bankr. W.D. Va. 2007) (citation omitted); see also Culp v. Stanziale (In re Culp), 545 B.R. 827, 840 (D. Del. 2016) ("Case law interpreting this provision has held that the burden of establishing the regularity and stability of income is on the debtor." (citations omitted)), aff'd, 681 F. App'x 140 (3d Cir. 2017).

Also, a debtor qualifies as a Chapter 13 debtor provided there is not "cause" that would warrant dismissal or conversion of a Chapter 13 case. Marrama, 549 U.S. at 372-74. Bad faith constitutes such "cause." Id.

> When using the term "bad faith," the Court is not referring to the Debtor's character. The term "bad faith" refers to actions that do not accord with the bankruptcy purpose of maximizing the distribution to creditors while also giving a debtor a fresh start by discharging debts. It is not a negative statement about an individual's character or behavior.

In re Ordonez, No. 10-37596, 2017 WL 4877242, at *6 (Bankr. D. Utah Oct. 27, 2017). The court's "determination of bad faith requires an examination of the totality of the circumstances." In re Fields, No. 15-05957-5-DMW, 2016 WL 3462203, at *4 (Bankr. E.D.N.C. June 17, 2006) (citation omitted).

If the debtor has acted in bad faith, the bankruptcy court is justified in denying a motion to convert in the exercise of its "broad" authority under 11 U.S.C. § 105(a) to prevent an abuse of process. Marrama, at 375 & n.13. The party objecting to conversion on the ground of bad faith bears the burden of proof. In re Southern, No. 10-50713, 2011 WL 1226058, at *2 (Bankr. M.D.N.C. Mar. 29, 2011).

In this case, the bankruptcy court reasoned that appellant did not have regular income to fund a viable Chapter 13 plan and that her motion to convert was not filed in good faith. (Notice of Appeal, DE # 1-1, at 7.) Based on the "unique" facts, the bankruptcy court denied conversion

8

to prevent an abuse of process. (Id.) This decision is reviewed for abuse of discretion. See Arenas v. U.S. Tr. (In re Arenas), 535 B.R. 845, 849 (B.A.P. 10th Cir. 2015) ("An order granting or denying a motion to convert under § 1307(c) is reviewed for abuse of discretion . . . ."); In re Howes, 563 B.R. 794, 805 (D. Md. 2016) ("[A] bankruptcy court's decision to order relief, pursuant to the authority granted to it under § 105(a), is reviewed for abuse of discretion." (collecting cases)).

First, appellant argues the bankruptcy court erred in its finding that she did not have the income to fund a Chapter 13 plan. (See Appellant's Br., DE # 18, at 27-28.) According to appellant, at the hearing, she provided the court with "proof" of three income streams—permanent employment at Arby's, full-time, temporary employment at PPD, and monthly Social Security disability benefits. (Id. at 28-29.) At the hearing, she also mentioned potentially using proceeds from the sale of her real property and her lump sum, Social Security disability (retroactive) payment to fund a Chapter 13 plan. (9/18/19 Tr., DE # 10, at 22.) For the following reasons, the court will not disturb the bankruptcy court's conclusion that appellant's representations are insufficient to show she has regular income sufficient to propose a Chapter 13 plan that would appropriately pay the allowed claims of creditors.

During the hearing before the bankruptcy court, appellant stated that when she filed her motion to convert, she was working at Arby's. (Id. at 53.) She gave the court no information about what her earnings were there. She also stated that since July, she had been working a temporary assignment at PPD for $20 per hour. (Id.) Although appellant now claims her income from PPD was approximately $500 to $800 per week, (Appellant's Br., DE # 18, at 29), she did not provide that information to the bankruptcy court nor did she provide any indication of how long she expected to be employed there. Without "baseline" salary information, as the

bankruptcy court correctly concluded, "[t]here is no way to establish the feasibility of a proposed chapter 13 plan[.]" (Notice of Appeal, DE # 1-1, at 10.)

As for Social Security benefits, at the hearing, appellant informed the bankruptcy court that she was expecting a $1,700 monthly disability payment and that such income was her "fallback" in the event she did not "get a full-time job." (9/18/19 Tr., DE # 10, at 54.) According to appellant, "the bankruptcy court apparently failed to consider the evidence of social security income that [she] offered at the Hearing, given the conspicuous absence of any mention of such income in either" its order denying her motion to convert or its order denying her motion for reconsideration. (Appellant's Br., DE # 18, at 29.) Although the court did not discuss that income in its analysis,[6] (see Notice of Appeal, DE # 1-1, at 9-10), it did not commit error in this regard.

Appellant is correct that Social Security income may be considered in determining the feasibility of a proposed Chapter 13 plan. See Mort Ranta, 721 F.3d at 254. Even so, "a debtor cannot be compelled to contribute Social Security income toward a chapter 13 plan. Note, however, although courts cannot require a debtor to apply his or her Social Security income to fund a plan, a debtor may pledge such income voluntarily, if he or she so chooses." In re Moriarty, 530 B.R. 637, 641 n.31 (Bankr. W.D. Va. 2015) (citing Mort Ranta, 721 F.3d at 250-51, 253-54).

From a review of the transcript of the hearing before the bankruptcy court and appellant's filings there, it is apparent appellant was primarily relying on her income from full-time employment to qualify as a Chapter 13 debtor. Appellant did not unqualifiedly commit to use all or a portion of her Social Security benefits, including the lump sum (retroactive) payment, to

---

[6] In providing background information, the bankruptcy court did recognize that appellant anticipated receiving Social Security disability benefits. (Notice of Appeal, DE # 1-1, at 5.)

fund a plan. More importantly, even if appellant did rely exclusively on benefits of $1,700 per month, she did not show that those benefits, less her expenses, would be sufficient or would continue long enough to fund a potential Chapter 13 plan of five years with $1,000 monthly payments. (See R., DE # 8-1, at 43-45 (listing monthly expenses of $770, not including rent or utilities); 9/18/19 Tr., DE # 10, at 56 (recognizing appellant will need $1,000 per month in disposable income to fund a five-year plan); Supp. R., DE # 18-7, at 15, 19 (stating it is expected appellant's health will improve and the Social Security Administration will conduct a disability review in August 2022).)

The bankruptcy court's order did not mention proceeds from the sale of appellant's real property as a potential source to fund a Chapter 13 plan. However, as with the Social Security benefits, the court concludes the bankruptcy court did not commit error. Appellant did not show that the sale of the property was imminent or likely to occur reasonably soon. (Cf. 9/18/19 Tr., DE # 10, at 62 (trustee representing that the property had been listed for sale for $45,000, then the price was reduced to $35,000 and there had been no offers).) "Thus, any income premised upon such a hypothetical sale is mere speculation and does not rise to the level of 'regular income' for purposes of Chapter 13 plan funding." In re Nealen, 407 B.R. 194, 205 (Bankr. W.D. Pa. 2009) (dismissing Chapter 13 case based on the debtor's failure to have regular income, including proceeds from the potential sale of real property, that would allow him to make plan payments).

Next, appellant argues the bankruptcy court erred in its determination that her bad faith warranted denial of conversion. In reaching its determination, the bankruptcy court relied on the following actions of appellant: filing her Chapter 7 petition five months after receiving a discharge in a previously filed Chapter 13 case; filing the motion to convert only after the trustee

filed the motion to approve the settlement of the employment discrimination lawsuit and in an admitted effort to regain control of the lawsuit; and devaluing the lawsuit to $0. (Notice of Appeal, DE # 1-1, at 10-11.) Appellant does not dispute these facts but rather the conclusions to be drawn therefrom.[7] (See Appellant's Br., DE # 18, at 34-37, 39-43.) Taking these facts together as it did, the bankruptcy court acted within its discretion in denying appellant's motion to convert based on her bad faith. See Ordonez, 2017 WL 4877242, at *7 (finding the debtor's motivation to convert her case was to retain control of her employment discrimination lawsuit and determining "[r]etaining [that] asset . . . at the expense of creditors is also evidence of bad faith"); In re Kerivan, No. 09-14581(AJG), 2010 WL 2472674, at *3-4 (Bankr. S.D.N.Y. June 15, 2010) (finding the debtor's nondisclosure of an interest in real property combined with the timing of the motion to convert suggested the debtor's motivation was to avoid the trustee's pursuit of that interest and indicated the debtor filed in bad faith, warranting denial of the motion).

In summary, the court concludes that the bankruptcy court did not abuse its discretion in denying appellant's motion to convert her case on the ground that she was not qualified to be a Chapter 13 debtor based on her income and bad faith.[8]

### C.    Approval of Settlement

Appellant next challenges the bankruptcy court's approval of the settlement of the employment discrimination lawsuit.[9]  "On motion by the trustee and after notice and a hearing,

---

[7] Appellant raises other arguments regarding the bankruptcy court's bad faith determination. Those arguments rely on her ability to amend her claimed exemption in the employment discrimination lawsuit. (See Appellant's Br., DE # 18, at 43-46.)  Because the court has concluded the bankruptcy court properly denied appellant's motion for reconsideration of its order prohibiting appellant from further amending that exemption, see supra Section II.A., these arguments fail.

[8] Appellant does not assert any arguments that pertain exclusively to the bankruptcy court's order denying her motion for reconsideration of the order denying conversion. (See Appellant's Reply, DE # 21, at 18.)

[9] The lawsuit became property of the bankruptcy estate upon appellant's filing of her bankruptcy petition. See 11 U.S.C. § 541(a); Logan v. JKV Real Estate Servs. (In re Bogdan), 414 F.3d 507, 512 (4th Cir. 2005).  In her reply

12

the [bankruptcy] court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). "Objection by the debtor is not fatal to such a settlement if it is found to be in the best interests of the estate as a whole." St. Paul Fire & Marine Ins. Co. v. Vaughn, 779 F.2d 1003, 1010 (4th Cir. 1985) (citation, alteration, and internal quotation marks omitted).

> The bankruptcy court must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise appeal." *In re Martin*, 91 F.3d 389, 393 (3rd Cir. 1996). When making that assessment and striking that balance, the court gives some deference to the business judgment of the trustee and also considers the following four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Id.* (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968)); *In re Buffalo Coal Co., Inc.*, 2006 WL 3359585, *3 (Bankr. N.D.W. Va. Nov. 15, 2006).
> 
> "To minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy." *In re Martin*, 91 F.3d at 393 (9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)). Based upon this policy to favor settlement, the bankruptcy court can approve a compromise over objections so long as the compromise does not "fall[] below the lowest point of reasonableness." *United States ex rel. Rahman v. Oncology Assocs., P.C.*, 269 B.R. 139, 149–50 (D. Md. 2001) (internal citations omitted), *aff'd*, *United States ex rel. Rahman v. Colkitt*, 61 Fed. Appx. 860 (4th Cir. 2003).

Van Wagner v. Atlas Tri-State SPE, LLC, No. 3:11-CV-75, 2012 WL 1636857, at *6 (N.D.W. Va. May 8, 2012) (footnote omitted). A decision approving a settlement agreement is reviewed for abuse of discretion. Off. Unsecured Creditors' Comm. v. Pension Benefit Guar. Corp., 164 F. App'x 454, 455 (4th Cir. 2006); Vaughn, 779 F.2d at 1010.

First, appellant argues that the bankruptcy court erred in allowing the trustee's motion for approval of the settlement because it purportedly "rubber-stamped" his motion and supplement

---

brief, appellant now suggests otherwise. She argues the entire value of the lawsuit is exempt, and therefore, the lawsuit was removed from the bankruptcy estate as of the filing of her amended exemption schedule. (See Appellant's Reply, DE # 21, at 26-27.) Appellant did not raise this argument in the bankruptcy court, (see Notice of Appeal, DE # 1-1, at 13 ("The debtor does not contest the trustee's statutory authority to prosecute or settle the Employment Action in the context of her chapter 7 case[.]")), and she therefore waived it, see In re Lewis, 611 F. App'x at 137.

and did not engage in its own independent research. To the contrary, the record confirms that the bankruptcy court independently and thoroughly examined the evidence and law bearing on the settlement of the employment discrimination lawsuit.

The bankruptcy court had before it the settlement agreement, (R., DE # 8-2, at 11-17); declarations of Red Hat's counsel in the employment discrimination lawsuit and of Teri Harrell, a manager within Red Hat's human resources department who provided a summary of events relevant to the lawsuit, (id. at 88-183); and an *accurate* summary of the relevant federal and state substantive law, (id. at 80-83). At the hearing on the motion, the bankruptcy court heard the testimony of Harrell. (9/18/19 Tr., DE # 10, at 75-125.) The court allowed appellant much leeway in her cross-examination of Harrell and, more importantly, with her arguments, accepting that appellant disputed much of Red Hat's evidence even though appellant had not come forward with her own evidence. Although the bankruptcy court expressed confidence in the trustee's assessment of the validity and value of the employment discrimination lawsuit, (see id. at 25), and although the court did not consult an employment lawyer, the court was qualified to make, and in fact made, its own independent assessment in concluding that "the settlement as proposed is in the best interest of both the estate and its creditors," (Notice of Appeal, DE # 1-1, at 16).

Next, appellant contends that the settlement of the employment discrimination lawsuit "is neither fair nor equitable, because it is not reasonably comparative to the damages or injuries allegedly suffered by [her]." (Appellant's Br., DE # 18, at 51 (internal quotation marks and citation omitted).) Appellant compares the $54,450 settlement to her $32,000,000 valuation. (Id.) On their face, the amounts are not reasonably comparative. However, the bankruptcy court found appellant's valuation is "wildly overvalued," (Notice of Appeal, DE # 1-1, at 11), and that finding is not clearly erroneous, given the facts and considering the applicable employment law.

Again, the bankruptcy court could approve the settlement so long as it "does not fall below the lowest point of reasonableness." Van Wagner, 2012 WL 1636857, at *6 (alteration, internal quotation marks, and citation omitted). Considering the record, the bankruptcy court's finding that the proposed compromise is within the range of reasonableness is not clearly erroneous, and it did not abuse its discretion in approving the settlement of the employment discrimination lawsuit.[10]

### D.  Denial of Reconsideration of Ascendium's Claim

In March 2019, Ascendium filed a proof of claim in the amount of $61,656.76, representing an unsecured student loan. (R., DE # 8-2, at 71-73.) On the same day she filed her objection to the trustee's motion for approval of the settlement, appellant filed an objection to Ascendium's claim (which she later amended), requesting that the bankruptcy court deny the claim. (Id. at 39-62.) The bankruptcy court denied appellant's objection and allowed the proof of claim.[11] (Id. at 196.) Appellant sought reconsideration of this order pursuant to Federal Rule of Civil Procedure 60(b). (Id. at 255.) She argued, in relevant part:

> the student loans that make up the vast majority of [her] outstanding debt have been sold to a third party that does not have a valid claim pending in these proceedings. To [her] knowledge there has been no transfer of the bankruptcy claim. The elimination of such claim would render unnecessary the Trustee's settlement of [her] claim against her prior employer . . . .

(Id. at 256 (citation omitted).) After a hearing, the bankruptcy court denied the motion for reconsideration. (Am. Notice of Appeal, DE # 5, at 4.)

---

[10] Appellant's final argument regarding the settlement hinges on her amending her claimed exemption in the employment discrimination lawsuit. (See Appellant's Br., DE # 18, at 52.) Because the court has concluded the bankruptcy court properly denied appellant's motion for reconsideration of its order prohibiting appellant from further amending that exemption, see supra Section II.A., this argument fails.

[11] Later, appellant filed another objection to Ascendium's proof of claim, which the bankruptcy court denied. Dale v. Butler, No. 7:20-CV-30-BR (E.D.N.C.), DE # 1, at 3-4. Appellant appealed that decision. See id. at 1. After the court denied her motion to consolidate the appeal with the instant appeal, id., DE # 21, appellant voluntarily dismissed her subsequent appeal, see id., DE ## 25, 26.

Appellant argues the bankruptcy court should not have allowed Ascendium's claim because there is a discrepancy as to the amount of the claim. (Appellant's Br., DE # 18, at 53.) This argument goes to the merits of the bankruptcy court's underlying order, which is not the subject of this appeal and this court does not review. See Breen, 2009 WL 440490, at *4.

To the extent appellant contends the bankruptcy court should have reconsidered its order based on Ascendium's sale of its claim, the court agrees with the trustee that appellant did not show any ground warranting relief under Rule 60(b). Appellant is correct that Rule 3001(e)(2) of the Federal Rules of Bankruptcy Procedure requires the transferee of a claim to file evidence of the transfer. (See Appellant's Br., DE # 18, at 53.) The purpose of this rule is "to ensure that *sufficient notice* is given when a claim against the debtor is transferred or assigned post-petition." Wallace Res., Ltd. v. United States (In re Arc Energy Corp.), No. 96-1529, 1997 WL 570878, at *5 (4th Cir. Sept. 16, 1997) (per curiam) (citation omitted); see also In re NutriPlus, LLC, No. 99-44743 (REG), 2002 WL 31254797, at *8 (Bankr. S.D.N.Y. Sept. 20, 2002) ("Bankruptcy Rule 3001(e) provides a mechanism for notice of the transfer, providing benefits for each of the claim transferor (giving the transferor notice and opportunity to be heard in the event that it disagrees with the assertion that there was an assignment) and transferee (helping ensure that the transferee will receive the distributions on account of the claim)." (footnotes omitted)). The transferee's failure to comply with the rule, without more, does not entitle a debtor to relief. See In re NutriPlus, 2002 WL 31254797, at *9 ("[T]he Disbursing Agent has cited no authority, and the Court is aware of none, that absolves a debtor from the duty to make payment on its allowed claims by reason of the failure of a transferee of a claim to file a Rule 3001(e)(2) notice of transfer."); cf. Educ. Credit Mgmt. Corp. v. Pulley, 532 B.R. 12, 28 (E.D. Va. 2015) ("Even if, as [the debtor] contends, [the student loan guarantor] did not provide notice of transfer after proof

of claim [] was assigned to it, Federal Rule of Bankruptcy Procedure 3001(e)(2), which provides for such notice, is not a basis for precluding a student loans creditor from collecting a debtor's student loans." (footnote omitted)).  Assuming Ascendium sold its claim to a financial institution, (see R., DE # 8-2, at 260), and assuming evidence of that transfer was not filed, the claim would not, by virtue of these facts alone, be eliminated as appellant urged before the bankruptcy court.  Therefore, the bankruptcy court did not abuse its discretion in denying appellant's motion for reconsideration of its order allowing Ascendium's claim.

### III.  CONCLUSION

For the foregoing reasons, the bankruptcy court's orders of 9 December 2019 and 8 January 2020 are AFFIRMED.

This 17 November 2020.

_____
W. Earl Britt
Senior U.S. District Judge