**SO ORDERED.**

**SIGNED this 25 day of November, 2020.**

*Stephani W. Humrickhouse*
**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

---

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:                                                    CASE NO. 18-05448-5-SWH
                                                          CHAPTER 7
WENDY M. DALE,

      DEBTOR


### ORDER DENYING DEBTOR'S MOTION TO RECONSIDER
### ORDERS ALLOWING TRUSTEE'S OBJECTION TO EXEMPTIONS

Pending before the court is the *pro se* chapter 7 debtor's motion to set aside or reconsider the court's orders of January 24, 2019 (Dkt. 37), and March 4, 2019 (Dkt. 51) (collectively, the "Exemption Orders"), which the debtor filed on July 31, 2020. Dkt. 199. The chapter 7 trustee filed a response in opposition to the motion on August 28, 2020. Dkt. 209. A telephonic hearing was held on this motion and several others on September 17, 2020, after which the court entered a short order resolving those additional motions (Dkt. 231) and taking this motion to reconsider under advisement. For the reasons that follow, the motion will be denied.

The debtor filed her chapter 7 bankruptcy petition on November 8, 2018, and the bankruptcy court entered an order appointing Algernon L. Butler, III as the chapter 7 trustee on November 9, 2018. The order granting the debtor's bankruptcy discharge was entered on February 21, 2019. At

issue in this motion to reconsider is the debtor's contention that she should be permitted to amend her exemptions, notwithstanding two Exemption Orders entered allowing the trustee's objections to her exemptions, in which he specifically sought to preclude further amendment of the exemption at issue here.

That exemption relates to a pre-petition civil action filed by the debtor on June 6, 2018 in the federal district court for the Eastern District of North Carolina. The debtor, proceeding *pro se* there as well as here, filed the action against her former employer, Red Hat, Inc., and Leah Moore, individually and in her official capacity as Red Hat's "Senior People Risk Manager." The debtor amended her complaint on August 14, 2018. The amended complaint alleged that Red Hat violated her rights under the Americans with Disabilities Act ("ADA") by failing to accommodate certain disabilities, by subjecting her to disparate treatment, and by engaging in retaliation; in addition, the debtor alleged wrongful termination under North Carolina state law (collectively, the "Claims Against Red Hat"). *Dale v. Red Hat, Inc.*, Case No. 5:18-CV-262-BO (E.D.N.C. 2018) ("Discrimination Lawsuit"). On motion of defendants Red Hat and Moore, the district court entered an order dismissing Moore from all of the claims asserted against her, and denying Red Hat's partial motion to dismiss.[1]

The Discrimination Lawsuit was pending at the time the debtor filed her chapter 7 petition and is the property of the bankruptcy estate. In schedules filed with her bankruptcy petition on November 8, 2018, the debtor valued the Discrimination Lawsuit at $32,000,000.00, and claimed no exemption in it. Dkt. 1 at 19. The debtor amended her schedules on December 27, 2018, to value

---

[1] The debtor also filed a state court action in Wake County Superior Court against Red Hat and multiple individual defendants, which also was dismissed on motion of defendants. *Dale v. Red Hat, Inc*., Case No. 17 CvS 14409 (2017).

the Discrimination Lawsuit at $0.00 and to claim an exemption in that asset pursuant to what is commonly termed the "wild card" provision set out in N.C. Gen. Stat. § 1C-1601(a)(2), of "100% of the fair market value, up to any statutory limit." The debtor likewise claimed the fair market value, up to any statutory limit, of certain cash deposits in the total amount of $70. Dkt. 24 at 8, 12. The trustee filed an objection, stating:

> As the debtor has claimed exemptions pursuant to N.C. Gen. Stat. § 1C-1601(a)(2) of "100% of the fair market value, up to any statutory limit" in both deposits of money listed with a value of $70, and in the Claims against Red Hat ... which she has valued at $0, the Trustee requests that the Court enter an order (i) allowing the Debtor's claim of exemptions in the deposits of money pursuant to N.C. Gen. Stat. § 1C-1601(a)(2) in the scheduled value of $70, and (ii) limiting the Debtor's claim of exemption in the Claims Against Red Hat ... to the statutory limit of N.C. Gen. Stat. § 1C-1601(a)(2) less $70 representing the claim of exemption in the deposits of money.

Dkt. 27 at 2. Under N.C. Gen. Stat. § 1C-1601(a)(2), the debtor's exemption in the Discrimination Lawsuit would be limited to $4,930.00. Arguing that the debtor already had received adequate time in which to claim exemptions and that any further amendment would be prejudicial to administration of the estate, the trustee sought entry of an order providing that the debtor could not further amend or increase her claims of exemptions. *Id.* The debtor did not respond, and the motion was allowed by order entered on January 24, 2019. Dkt. 37.

On February 22, 2019, the trustee initiated what was essentially a "do-over" of his objection by filing an amended objection to exemptions in which he sought the same relief the court already had allowed, explaining that the original objection to exemptions served on the debtor had been returned to the trustee's office as "Undeliverable," notwithstanding the fact that it had been correctly addressed. The trustee stated that his office had contacted the debtor via email and had confirmed with her the accuracy of that address, as well as the debtor's actual receipt of court notices and

orders, and that the debtor had informed the trustee that she was temporarily living elsewhere.  This amended motion, seeking the same relief, was then served on the debtor via email, at her permanent address, and also at the temporary address she provided to the trustee.  Again, the debtor did not file a response. The court's second order granting this amended objection to the debtor's claim of exemptions was entered on March 4, 2019.  Dkt. 51. This order refers to the "Exemption Orders" in the plural but, as the trustee accurately points out, the orders are identical and the second order supplants the first order.

In this motion to reconsider, the debtor contends that the Exemption Orders are "in direct contravention of the Bankruptcy Code and Rules" and are "void to any extent they seek to limit Debtor's full claim of exemption in the Discrimination Lawsuit or her right to amend her exemption schedule." Dkt. 199 ("Debtor's Mem.") at 3-4.  In addition and more specifically, the debtor contends that

> the information brought forward by the Trustee in his Disclosure and Application to Approve Agreement shows that the Court's Orders are no longer prospectively equitable in that any prejudice claimed by the Trustee in his Objection to Exemptions is no longer material because the Trustee's reasonable administrative expenses in attempting to liquidate the Discrimination Lawsuit are being covered by Red Hat; therefore, any basis that may have existed for the Court's prohibition on amendments to Debtor's exemption schedule is no longer applicable.

*Id*. at 4.  Finally, and *for the first time*, the debtor argues that the Exemption Orders "do not impart justice in this matter because the Debtor has a statutory right to a full, in-kind exemption of her Discrimination Lawsuit *because it constitutes a claim for payment for personal injuries*," such that justice requires that the Exemption Orders be overturned.[2]  *Id.* (emphasis added).  In response, the

---

[2] The Discrimination Action does not allege personal injury, as will be discussed later in this order, beyond a recitation that the debtor suffered emotional harm along with other repercussions from her dismissal from Red Hat; specifically, that she

trustee argues that the debtor's motion is both untimely and unfounded.  Dkt. 209 ("Trustee's Mem.).

## DISCUSSION

Federal Rule 60 governs motions for relief from a judgment or order, and is made applicable in bankruptcy by Rule 9024 of the Federal Rules of Bankruptcy Procedure.  That rule provides that relief from a judgment or order may be provided for any of six specified reasons, the existence of which must be established by the petitioning party:

(b) Grounds for Relief from a Final Judgment, Order or Proceeding.  On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
    (1) mistake, inadvertence, surprise or excusable neglect;
    (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
    (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
    (4) the judgment is void;
    (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
    (6) any other reason that justifies relief.

(c) Timing and Effect of Motion
    (1) Timing.  A motion under Rule 60(b) must be made within a reasonable time – and for reasons (1), (2), and (3) no more than a year after entry of the judgment or order or the date of the proceeding.

---

suffered severe emotional distress, public humiliation, damage to her professional and personal reputation, loss of income and benefits, loss of personal assets including her real estate investments and Red Hat stock, damage to her personal credit rating, social isolation, and other financial and non-financial harm.

*Dale v. Red Hat, Inc.*, Case No. 5:18-CV-00262-BO, Dkt. 20 at p 14 (Amended Complaint filed on August 15, 2018).

Fed. R. Civ. P. 60(b), (c).  In addition, both the debtor and the trustee acknowledge that under Fourth Circuit precedent, *before* a party may petition for relief under Rule 60(b), the party

> first must show "timeliness, a meritorious defense, a lack of unfair prejudice to the opposing party, and exceptional circumstances."  *Werner v. Carbo*, 731 F.2d 204, 207 (4th Cir. 1984).  After a party has crossed this initial threshold, he then must satisfy one of the six specific sections of Rule 60(b).  *Id.*

Debtor's Mem. at 4, *quoting Dowell v. State Farm Fire & Casualty Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993); *see also* Trustee's Mem. at 13-14.  Whether to grant a motion for relief under any of these circumstances is within the sound discretion of the court.  *Wendy Dale v. Algernon Butler, III,*  No. 7:19-CV-254-BR, at 5 (E.D.N.C. Nov. 17, 2020) (Dkt. 2457) (citing cases); *see also Specialized Loan Servicing, LLC v. Devita*, 610 B.R. 513, 519 (E.D.N.C. 2019) (noting, in context of a thorough discussion of Rule 60(b) motions, that bankruptcy courts' denials of Rule 60(b) motions are reviewed for abuse of discretion).

The debtor maintains that she can satisfy these initial prerequisites, then argues that the court exceeded its authority in entering the orders such that they are void, per Rule 60(b)(4); that information submitted  by the trustee in connection with his motion to approve an agreement with Red Hat in May of 2019 shows that the Exemption Orders are no longer prospectively equitable under Rule 60(b)(5); and, under Rule 60(b)(6), that the orders "do not impart justice in this matter because the debtor has a statutory right to a full, in-kind exemption of her Discrimination Lawsuit because it constitutes a claim for payment for personal injuries, and justice therefore requires that they be overturned." Debtor's Mem. at 3-4.  The court turns now to the prerequisites for consideration of the motion to reconsider, and the initial question of timeliness.

I.      **Timeliness of Motion to Reconsider**

Although the court refers to the "Exemption Orders" in this motion, it is undisputed that the second exemption order replaced the first one and is the only Exemption Order in effect. *See* Trustee's Mem. at 12, n.4.  The first order was entered on January 24, 2019, and the second order was entered on March 4, 2019. This motion to reconsider was filed on July 31, 2020 – over sixteen months later.

The debtor maintains that she has "consistently sought to protect her interests in the discrimination lawsuit to the best of her ability and knowledge, objecting almost immediately to the Trustee's Motion to Approve Compromise of Controversy and timely filing a Motion to Convert to Chapter 13 before any action had been taken on the Trustee's Motion."  Debtor's Mem. at 4-5. Those particular motions and matters are not at issue now, however, though it certainly is true that the debtor has been an active and capable participant in her bankruptcy case. For the matter that *is* at issue here, the debtor has offered no explanation as to why she did not previously seek reconsideration of the Exemption Orders on the bases she now asserts.[3]  The debtor also did not respond in any way whatsoever to the trustee's initial objection to her exemptions at the time his

---

[3] The debtor did seek reconsideration of the Exemption Orders (specifically, the first Exemption Order) in her motion to reconsider and/or for a new trial filed on January 3, 2020, wherein she asserted that the court should reconsider or amend that order, together with two additional orders.  Dkt. 123.  While that motion to reconsider was filed within a year of entry of the Exemption Order, it sought reconsideration on a completely different basis from the one the debtor now asserts.  After a hearing on the motion, it was denied by order entered on January 8, 2020.  Dkt. 132. The debtor appealed the January 8, 2020 order denying reconsideration, which was affirmed by the district court on November 17, 2020.  Dkt. 247. The district court's order has some import in connection with this court's review of the instant motion, and is discussed *infra*.

7

objection was filed, either by filing a response, or requesting a hearing, or requesting additional time in which to respond if needed; nor has she provided any explanation as to why.

Instead, the debtor maintains that "this Motion is timely in that it is filed within a reasonable amount of time under the circumstances, before the end of the bankruptcy case, and without unnecessary delay after the Trustee's filing of his Disclosure of and Application to Approve Agreement." Debtor's Mem. at 5. While the bankruptcy case is not yet closed, the court otherwise cannot agree. There is nothing in "the circumstances" of which the court is aware to excuse the delay in filing this motion, and the trustee's application to approve agreement to which the debtor refers was in fact filed on May 20, 2019 – well over a year ago. Dkt. 59. The debtor expects the court to excuse the lateness of this motion, without providing any legitimate basis upon which the court could even consider whether it would be appropriate to do so.[4]

Historically speaking, "courts ruling on Rule 60(b) motions 'have been unyielding in requiring that a party show good reason for his failure to take appropriate action sooner.'" *Kontoulas*

---

[4] The court is well aware that the debtor is proceeding *pro se* in this matter. However, while "*pro se* litigants are entitled to some deference from courts," that deference is not "unlimited." *Ballard v. Carlson*, 882 F.2d 93, 94 (4th Cir. 1989), *cert. denied*, 493 U.S. 1084 (1990), *quoted in Harrington v. Saturn Corp.*, Case No. 8:17-CV-00656, 2017 WL 6419138, at *1 (D. Md. Sept. 25, 2017). As it does with all *pro se* parties, this court has extended to the debtor every available measure of patience and leniency, and has taken the most solicitous view reasonably possible of her arguments and pleadings.

The court notes that Ms. Dale is most certainly not a typical *pro se* litigant. She has extensive paralegal training and experience, which was a component of her position as a contracts specialist in Red Hat's Commercial Legal Group and is quite apparent in both her pleadings and in the legal maneuvering she is currently undertaking in an effort to seek reconsideration or "do overs" of various aspects of this case. The debtor has at all times appeared to the court to be a sophisticated and capable participant in this matter, which is the debtor's third bankruptcy case in this district. The debtor also has at all times been fully aware of a fundamental precept that this court emphasizes to every *pro se* party: Neither the court nor any attorney on the other side of an issue can act as their advocate, or provide legal advice to them.

*v. A.H. Robins Co.*, 745 F.2d 312, 316 (4th Cir. 1984) (internal citation omitted).  The debtor delayed for almost a year and a half in filing this motion, during which time – as is addressed below – a series of significant actions were taken and decisions made in reliance on the Exemption Orders. The court concludes that this motion is untimely and that the debtor has provided no adequate or reasonable explanation for its lateness.  On that basis alone, the motion fails to comport with the necessary prerequisites and must for that reason be denied.

## II.    Meritorious Defense

The second prerequisite to reconsideration under Rule 60(b) is that the petitioning party establish a meritorious defense, which "requires a proffer of evidence which would . . . establish a valid counterclaim" or, put another way, indicate the likelihood of a contrary outcome.  *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp*., 843 F.2d 808, 812 (4th Cir. 1988).   The debtor does not specifically address the second prong as such, but instead brings forward the substance of and asserted bases for the reconsideration she asks the court to undertake.  She maintains that the Exemption Orders were "in error and void ab initio" and "wrongfully deprived Debtor of the right to further amend her claim of exemptions in the Discrimination Lawsuit." Debtor's Mem. at 5.

The trustee responds that in order to establish a meritorious defense, the debtor must proffer evidence that she is entitled to both amend her claim of exemption in the Discrimination Lawsuit, again, and further that she may claim an unlimited personal injury compensation exemption pursuant to N.C. Gen. Stat. § 1C-1601(b).  Trustee's Mem. at 14-18.  The trustee cites a series of obstacles to the debtor in undertaking this effort, including: 1) the specific provisions of the Exemption Orders which preclude further attempts to amend the exemption; 2) the doctrines of res judicata and claim

preclusion, which likewise preclude such attempts, citing *In re Gress*, 517 B.R. 543, 548 (Bankr. M.D. Pa. 2014) (debtor's attempt to amend claim of exemptions precluded where exemption has previously been disallowed); and 3) the waiver of any ability to assert the exemption due to the debtor's failure to assert same after notice do to so, under N.C. Gen. Stat. § 1C-1601(c)(3).

Further, the trustee argues, *even if* the Exemption Orders had not been entered and the obstacles just cited did not apply, the debtor still would not be able to amend or modify the exemption under N.C. Gen. Stat. § 1C-1603(g), due to the lack of a material change in circumstances as required by that statute. *See Taylor v. Caillaud*, No. 3:15-CV-00206-GCM, 2015 WL 7738391, at *5 (W.D.N.C. Dec. 1, 2015). The trustee concludes that principles of equitable estoppel likewise bar any further amendment to the sworn representations made by the debtor in her schedules.

Finally, the trustee argues that the debtor's newly asserted basis for amendment is not even legally cognizable in light of the facts and procedural posture of this case. Specifically:

> The extensive and uncontroverted testimony given by witnesses at the hearing of September 18, 2019 on the Trustee's Motion for Compromise shows that . . . she has not sustained any personal injuries for which Red Hat could be held responsible. To the contrary, based upon the record before the Court the Debtor's suit was nothing but a "strike suit" and the value of the Red Hat Settlement that the Trustee was able to negotiate for the estate is not based upon or compensable for any injury to the Debtor. Because the Debtor is unable to demonstrate that she has any personal injuries for which Red Hat could be held responsible, she is unable to claim an exemption in the Claims Against Red Hat based on "compensation for personal injury" pursuant to N.C. Gen. Stat. § 1C-1601(a)(8).

Trustee's Mem. at 18.

It appears to the court that the trustee's final argument is most responsive to what the debtor seeks to do via this second motion to reconsider the Exemption Orders, which is to recharacterize the Discrimination Lawsuit as a personal injury tort action (notwithstanding the fact that the compromise of the Discrimination Lawsuit already has been both approved and consummated), and

10

then assert that the settlement proceeds of the Discrimination Lawsuit constitute "compensation for personal injury" which may, on that basis, be exempted by the debtor to an unlimited extent. In other words, the debtor seeks to not only turn back time to the petition date in order to permit her to explore other strategies in the context of how best to exempt her assets, but to also recharacterize the very nature of the pre-petition asset – the Discrimination Lawsuit – she seeks to claim. There is no basis upon which the debtor may do so.

In the interest of thoroughness, the court will review the history of this case, which makes it apparent to the court that the underlying premise of this motion to reconsider is the debtor's ongoing opposition to and disagreement with the court's order of December 9, 2019, wherein the court denied the debtor's motion to convert to chapter 13 and allowed the trustee's motion for approval of a compromise of the controversy between the debtor and Red Hat. Dkt. 101. The trustee's final argument in the context of whether the debtor can show a meritorious defense – which is that she seeks to recharacterize the Discrimination Lawsuit in order to take a fresh legal approach to claiming an exemption in it – likewise appears to recognize the actual gist of this motion. The court is aided in this discussion by the order recently entered by the District Court for the Eastern District of North Carolina, wherein that court affirmed both the December 9, 2019 order and this court's order of January 8, 2020, which denied the debtor's first motion to reconsider the Exemption Order and her motion for a stay pending appeal. Dkt 247.

By way of review, in the trustee's motion for approval of compromise, which he filed well over a year ago, the trustee sought approval of a proposed settlement of the Discrimination Lawsuit and the Claims Against Red Hat for the total sum of $54,450.00; of this amount, the trustee proposed that Red Hat pay $10,000.00 to the bankruptcy estate to compensate the estate for time and expense

expended by the trustee, with the remaining $44,450.00 paid to the estate in full and final resolution of any claims the estate may have had against Red Hat (the "Settlement Agreement"). D.E. 59. The debtor filed a response in opposition to the motion in which she argued among other things that the trustee's proposed settlement was unreasonable, reflected a lack of due diligence, and was fundamentally unfair in that the proposed agreement grossly undervalued a claim she estimated to be worth $32 million dollars. D.E. 66.

The debtor also sought, unsuccessfully, to convert from chapter 7 to chapter 13, candidly explaining that it was her "intent to render [the] Trustee's Motion to Approve Settlement moot by converting to Chapter 13 Bankruptcy, under which she is entitled to retain control over her assets." Debtor's Response to Trustee's Supplemental Motion to Approve Compromise of Controversy and Supplemental Motion to Convert to Chapter 13 (D.E. 99) at 1 ("Debtor's Response"). In support of that motion, the debtor maintained that she had at all times been fully transparent about her income and assets, and that if she was permitted to convert the case, she would not be "depriving her creditors of anything they are legally entitled to so long as Debtor complies with the applicable bankruptcy law and a Court-approved Chapter 13 Plan." *Id.* at 6. For the reasons set out in the court's order of December 9, 2019, applicable bankruptcy law precluded conversion of this case and supported the court's approval of the compromise proposed by the trustee. Dkt. 101 ("Compromise Order"). This order was affirmed by the district court on November 17, 2020. Dkt. 242.

The court notes that in that order, the court also considered the trustee's contentions that the debtor had made misleading and inaccurate representations on her statements regarding the Employment Action. The court undertook the necessarily broad analysis of whether the debtor's motion to convert should be denied on grounds that it was not filed in good faith, which generally

involves an assessment of the totality of the circumstances.  *See, e.g., Fields*, 2016 WL 3462203 *4 ("A determination of bad faith requires an examination of the totality of the circumstances."); *see also In re Marino*, 388 B.R. 679, 682 (Bankr. E.D.N.C. 2008).  The court concluded that the debtor had misrepresented the value of the Discrimination Lawsuit, and taken unwarranted steps to regain control of that action, in ways that were "uncomfortably similar to the facts in *Marrama*." Dkt. 101 at 11, *citing  Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007).

Specifically, the court concluded that the problem here lay "not in the debtor's desire to convert, but rather in the steps she has undertaken to facilitate it: Specifically, the debtor's amendment of her schedules to downgrade the value of the Discrimination Lawsuit from $32,000,000.00, which the court finds to be wildly overvalued, to $0.00 with a claimed exemption in that "fair market value," which the court found to be a material and intentional misrepresentation."  Dkt. 101 at 11.  As the court explained:

> The court sees the debtor's misrepresentation of the value of the Employment Action, together with her effort to convert the case in order to take control of that asset despite her inability to qualify as a chapter 13 debtor, as being uncomfortably similar to the facts in *Marrama*.  In that case, the chapter 7 debtor made misleading or inaccurate statements about a number of things and especially about his principal asset, which was a house in Maine.  The debtor listed its value as zero, and denied that he had transferred any property other than in the ordinary course of business within the previous year.  "In fact," the Court wrote, the property "had substantial value, and Marrama had transferred it into the newly created trust for no consideration seven months prior to filing his Chapter 7 petition."  *Marrama,* 549 U.S. at 368.  Marrama acknowledged that "the purpose of the transfer was to protect the property from his creditors."  *Id.*

*Id.*

This court went on to discuss *Marrama* at some length in the Compromise Order, and brings up that discussion in this order as well because, while *Marrama* is primarily cited in the context of conversion, the import of that case reaches much farther. Significantly, the *Marrama* Court observed

13

that "[n]othing in the text of either § 706 or § 1307(c) or the legislative history of either provision) limits the authority of the court to take appropriate action in response to fraudulent conduct by the atypical litigant who has demonstrated that he is not entitled to the relief available to the typical debtor." *Marrama,* 549 U.S. at 374-75.  To the contrary, the Court held, the *"broad authority granted to bankruptcy judges to take any action that is necessary or appropriate 'to prevent an abuse of process' described in § 105(a) of the Code*, is surely adequate to authorize an immediate denial of a motion to convert filed under § 706 in lieu of a conversion order that merely postpones the allowance of equivalent relief and may provide a debtor with an opportunity to take action prejudicial to creditors." *Id.* at 375 (emphasis added, footnote omitted).

Returning to the instant motion, and with the full history of this case in mind, the court concludes that the debtor has not established a meritorious defense sufficient to warrant reconsideration of the Exemption Orders. And again, it is evident that what the debtor seeks to do here, by means of highly sophisticated legal maneuvering, is to take a fresh approach to claiming her exemptions by asserting that the Discrimination Lawsuit was, at least in part, a personal injury action such that proceeds from it would be exempt under N.C. Gen. Stat. § 1C-1601(a)(8).  That untimely effort is precluded by both fact and law. Neither the Settlement Agreement nor the debtor's Discrimination Lawsuit include any assertion or discussion of a personal injury claim, nor did the debtor give any indication of a personal injury component to the Discrimination Lawsuit in connection with her opposition to the trustee's motion to approve the settlement of the lawsuit.  Near the beginning of the almost four-hour hearing on that motion, in response to the debtor's arguments that the trustee failed to accurately comprehend the potential value of the Discrimination Lawsuit, the court emphasized to the debtor that in the litigation context, "there comes a time when if

14

someone has a position that is vital, that they ought to come forward, and show it." Dkt. 145 at 25 (transcript of September 18, 2019 hearing) (observing further that "today would have been a good time for you to have done that"). Instead, as the debtor herself made clear during the hearing on the trustee's motion to approve settlement, the Discrimination Action had four components:

> The, the claims that I've made in my lawsuit are failure to provide a reasonable accommodation. Uh, there is also, um, a harassment. There is also I guess adverse – you know, taking an adverse action or discrimination against someone because they are disabled. Um, and, uh, there's retaliation, which is all, all – you know, there are actually like four separate parts.

Dkt. 145 at 148. The separate state law claim, the debtor argued, is "a claim for wrongful termination under North Carolina law." *Id.* at 149. In addition, the debtor sought to advance public policy objectives by acting in accordance with her view that large companies should not be permitted to take wrongful actions without being held accountable. *Id.* at 147-48. She emphasized that it was not "just about money" but rather about exercising a "right to control," and to "have a voice ... to explain what happened [and] why it's so devastating for me." *Id.* at 18. At no point in this whole long process has there been even a whiff of a *personal injury claim* against Red Hat – not until the debtor sought, in July of 2020, to recharacterize her exemption. There is simply no basis upon which the debtor may do so.

## II.    Lack of Unfair Prejudice to Opposing Party

On this point, the debtor focuses on the provision of the compromise reached as between Red Hat and the trustee, and insists that the motion is

> not prejudicial to any interested party because it only seeks to set aside the Court's Orders in order to clarify that the Discrimination Lawsuit has already been fully exempted, or alternatively, to allow the debtor to exercise her statutory right to claim a full, in-kind exemption of the Discrimination Lawsuit by amending her claim. Such exemption would not be prejudicial to the estate because the agreements encapsulated in the Trustee's Motion to Approve Compromise of Controversy and

15

the Trustee's Disclosure of and Application to Approve Agreement with Red Hat provide that Red Hat will be responsible for the Trustee's administrative expenses arising from his attempts to settle the Discrimination Lawsuit, in amounts which are more than sufficient to cover his reasonable expenses; therefore, should the Court grant this motion and Debtor successfully exempts the Discrimination Lawsuit, the Trustee would still be compensated for his efforts. Additionally, no creditor would be prejudiced because all creditor claims were filed prior to the filing of the Trustee's Motion for Approval of Compromise or Controversy; therefore, there is no evidence of detrimental reliance by any creditor upon the Orders or upon the Trustee's Proposed Settlement with Red Hat that seeks to liquidate the Discrimination Lawsuit for the benefit of creditors.

Debtor's Mem. at 5. The debtor, citing *Tignor v. Parkinson*, 729 F.2d 977, 979 (4th Cir. 1984), emphasizes that amendment to schedules generally is to be freely allowed, and that where a trustee's position in a case has not changed as a result of a particular exemption not being claimed when the petition was filed, there are "no exceptional circumstances warranting denial of the debtor's amendment" and the "trustee may not successfully claim detrimental reliance simply because a schedule that could be amended was in fact amended."

In addition, the debtor maintains, even if the posture of this case was such that the trustee would incur administrative expenses in having to reopen the case and object to an exemption, such a development still would not weigh against the debtor's right to amend her exemption schedule: Under *In re Dunn*, she argues, the court "allowed an amended claim for full exemption of a personal injury settlement several years after the case had been closed, despite the trustee's objection," based on that court's conclusion that "[d]isallowing the exemption at this juncture would deprive the debtor of an asset *that he is otherwise lawfully entitled to* and would result in a windfall to his creditors not sanctioned by the Bankruptcy Code." *In re Dunn*, No. 05-09708-8-JRL (Bankr.

16

E.D.N.C. July 7, 2010) (emphasis added), *quoted in* Debtor's Mem. at 10.[5]  And, to the extent there would be any prejudice to the trustee if reconsideration was allowed and the relief sought awarded, the debtor believes that "any prejudice incurred by the Trustee as a result of this Motion is the result of his own bad faith intentions in refusing to acknowledge Debtor's statutory rights under the Bankrupty Code, and most certainly not a consequence of Debtor seeking to amend her exemption schedule and exempt her assets pursuant to such rights."  Debtor's Mem. at 6.

The trustee responds with a recitation of the extensive series of decisions made, actions undertaken, and orders entered in this case, all of which were responsive to and very "specifically in reliance on the provisions of [the Exemption Orders] limiting the Debtor's exemption to a maximum of $4,930 and precluding her from amending her exemptions to claim or increase her claim of exemption in the Claims Against Red Hat."  Trustee's Mem. at 19.  The court need not repeat those here, and as the foregoing discussion of the history of the matter makes clear, there is simply no way to unwind this case as the debtor seeks to do without extreme – and unfair – prejudice to trustee and to the bankruptcy estate.  It is true that creditors' claims were filed prior to the trustee filing the motion to approve settlement, but in negotiating that settlement and in filing the motion to approve it, the trustee took into account the obligation of the estate to pay unsecured creditors.

---

[5] The court's rationale in *Dunn* does not extend to the instant case.  In that case, the debtor was "entitled to a *personal injury settlement* from a *mass tort pharmaceutical product litigation suit.*"  *In re Dunn*, No. 05-09708-8-JRL, at 1 (Bankr. E.D.N.C. July 7, 2010) (emphasis added).  The court attributed the debtor's failure to schedule the personal injury claim as an exempt asset to "excusable neglect," based upon the debtor's uncertainty of how he became involved in the class action in the first place, his reasonable reliance on communications from the class action attorney to the effect that the action had been dismissed, his own mental and physical health challenges, and the incompetence of his counsel.  *Id.* at 2-3.  In contrast, this case involves unfortunate efforts to assign value based on changing legal theories, and the facts of record have no tenable connection to a personal injury action for which the debtor conceivably could exempt "compensation for personal injury."

Here, if the debtor were permitted to amend her exemptions to claim a personal injury exemption (which, as the preceding discussion makes clear, is an impossibility), the trustee would no longer have that asset for purposes of distribution, which would be tantamount to abandonment. The court is of the view that prejudice to the trustee and the estate could not be any clearer. And again, on that point, the debtor's appeal of the court's order denying her first motion to reconsider the order limiting her ability to further amend her exemptions *and* the order approving the trustee's settlement of the Discrimination Lawsuit both recently were *affirmed*. In sum, that ship has sailed.

### IV.    Exceptional Circumstances Warranting Relief

Finally, the debtor contends that exceptional circumstances exist here because the trustee has acted "based on his own bad faith intentions," undertaken "clandestine attempts to deprive this *pro se* Debtor of her statutory exemption rights," and has "exploited her lack of legal knowledge an experience in his attempts to deny her the full in-kind exemption in the Discrimination Lawsuit," among other things. Debtor's Mem. at 6-7. The court, upon full review of the pleadings and based upon the several hearings conducted in this matter, concludes that there is no evidentiary basis whatsoever on which to conclude that the trustee has undertaken any aspect of his duties with an unprofessional motive or goal, let alone that the trustee has engaged in efforts to exploit the debtor or to act in any way that could be deemed "callous and unfair." The court is unable to find the existence of any exceptional circumstances that would support reconsideration of the Exemption Orders.

### CONCLUSION

In light of the court's conclusion that the debtor cannot establish *any* of the prerequisites to reconsideration of the Exemption Orders, and because it is necessary to satisfy *all* of those

prerequisites to proceed to reconsideration under Rule 60(b), the motion to reconsider must be dismissed. *Werner v. Carbo*, 731 F.2d 204, 206-07 (4th Cir. 1984). Though the court lacks grounds on which to undertake the Rule 60(b) analysis, the court's comprehensive review of the debtor's arguments makes plain that there are no bases under Rule 60(b) on which the debtor could prevail. The Exemption Orders are not void, they are not "prospectively inequitable," and the interests of justice would not be served by reconsideration.

It is apparent to the court that this motion to reconsider the Exemption Orders is prompted by the debtor's reconsideration of her own tactical decisions in the bankruptcy case, and it is plain that many of these have not led to the outcome that she expected or desired. But it simply is not the function of a Rule 60(b) motion to permit a party to advance new theories, or to wrangle for another bite at the decisional apple. The court finds no grounds on which it either can or should reconsider the Exemption Orders, and the motion to reconsider the Exemption Orders is, for the foregoing reasons, **DENIED**.

## END OF DOCUMENT